Misty Perry Isaacson, CA SBN 193204
**PAGTER AND PERRY ISAACSON**
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, California 92701
Telephone: (714) 541-6072
Facsimile:   (714) 541-6897
Email: misty@ppilawyers.com

Attorneys for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>FRANCISCO RAMIREZ RAMIREZ and<br>AURORA MENDEZ BARAJAS,<br><br>                    Debtors. | Case No.: 8:18-bk-13870-CB<br><br>Chapter 13<br><br>DEBTORS REPLY TO OBJECTIONS TO<br>CONFIRMATION FILED BY TRUSTEE<br>AND INVESTMENT CONSULTANTS<br><br>Date:  December 13, 2018<br>Time:  1:30 p.m.<br>Ctrm:  5D |

Francisco Ramirez Ramirez ("Ramirez") and Aurora Mendez Barajas (collectively the "Debtors") hereby submit their Response to Creditor Investment Consultants, Inc. ("ICI") and the Chapter 13 Trustee's ("Trustee") Objections to Confirmation of Chapter 13 Plan.

**I.**

**STATEMENT OF RELEVANT FACTS**

1.     In or about April 2007, the Debtors were visited at their residence located at 13422 Elmwood St., Garden Grove, CA 92845 ("Residence") by an agent for Homesavers. The Homesavers agent advised the Debtors that they qualified for a home equity line of credit ("HELOC") in the maximum amount of $72,000.  The terms of the HELOC were explained to the

PPI Law
525 N. Cabrillo
Park Drive,
Suite 104
Santa Ana, CA
92701

(714) 541-6072

- 1 -

Debtors in Spanish, but executed in English.  At this time, neither of the Debtors was well-versed in the English language.  Spanish is the Debtors primary language.

2. Shortly after this visit, on or about April 27, 2018, the Debtors executed a HELOC revolving loan agreement ("Note") made payable to Homesavers with a credit limit of $65,000, with the possibility of an additional $7,000 adjusted by the lender, for a total of $72,222.00.  The Note was an interest only loan at 12.99% with a maturity date of March 27, 2015.  A copy of the Note is attached as Exhibit 1 to the declaration of Ramirez.

3. The Deed of Trust and Assignment of Rents for the HELOC was recorded in the Orange County Recorder's Office on May 18, 2007.  A copy of the Deed of Trust is attached as Exhibit 2 to the declaration of Ramirez.

4. From the HELOC, the Debtors borrowed a total of $29,771.58.  A copy of the disbursement statement from First American Title is attached as Exhibit 3 to the declaration of Ramirez.

5. Debtors made payment, in person, to Homesavers on the Note until they stopped receiving billing statements.  Debtors then visited Homesavers' office where they had signed the Note to inquire why they were no longer receiving statements; however Homesavers was no longer at that location.

6. In or about May 2007, the Homesavers' Note was transferred to TTR Investment, Inc. Profit Sharing Plan ("TTR").  A copy of the Assignment is attached as Exhibit 4 to the declaration of Ramirez.

7. On or about October 21, 2013, a notice of default ("NOD") was recorded by California TD Specialist on behalf of TTR.  A copy of the NOD is attached as Exhibit 5 to the declaration of Ramirez.

8. On or about January 28, 2014 a notice of sale ("NOS") was recorded with a sale date of February 19, 2014.

9. On or about February 18, 2014, Mr. Ramirez through his attorney, Gregory Bosse ("Bosse") filed a voluntary petition under Chapter 13 (Case No. 8:14-bk-10975-CB), staying the pending foreclosure sale by TTR.

10. TTR objected to confirmation of Mr. Ramirez' plan indicating that it did not properly provide for its claim in full. Per TTR's claim, they alleged that $135,658 was due and owing, which included $72,000 in the principal balance owing on the Note.

11. Instead of litigating the issue regarding TTR's claim, Bosse advised Mr. Ramirez to voluntarily dismiss his case and further indicated that he would help the Debtors find an investor to purchase the Note.

12. During the time in which Bosse was attempting to assist the Debtors in finding another investor to purchase the Note, the pending foreclosure sale was again set. Bosse filed a subsequent chapter 13 petition for Mrs. Barajas to once again stay the sale (Case No. 8:14-bk-14723-ES).

13. Shortly after Mrs. Barajas' chapter 13 case filing, Bosse advised the Debtors that he found a company named Investment Consultants, Inc., a Nevada corporation and that ICI was willing to purchase the Note. Bosse did not provide the Debtors with any specific terms of a modification of the Note, and only indicated that the monthly payments would be $1,515.50 going forward and that they should tender the payment to his office each month. The TRR assignment to ICI was memorialized by an assignment recorded with the Orange County Recorder's Office on November 25, 2014. A copy of the assignment is attached as Exhibit 6 to the declaration of Ramirez.

14. The Debtors began making the $1,515 payments starting in or about January 2015 up until the filing of their prior joint filing on November 20, 2017 (Case No. 8:17-bk-14577-CB). See copies of the Debtors' Mortgage Interest Statements (Form 1098) for 2015 and 2016 evidencing such payments attached as Exhibit 7 and copies of checks for payment made from January 2017 to June 2017 attached as Exhibit 8 to the Declaration of Ramirez. Although the Debtors were tendering their payments to Bosse for transfer to ICI, the 1098 forms provided to the Debtors were from a company named Paladin Investment Group ("PIG").

15. The Debtors have never received a billing statement from ICI even though they have requested statements on several occasions. As such, the Debtors do not have any clue how any of their payments have been applied.

16. After filing of their 2017 chapter 13 petition, Bosse refused to accept any further payments on behalf of ICI, nor would he provide an alternate address for the Debtors to send their payments.

17. Upon further investigation, the Debtors discovered that Bosse was the CEO, Secretary, CFO and sole officer of PIG. A copy of PIG's articles of incorporation are attached as Exhibit 9 to the declaration of Ramirez. Absent evidence to the contrary, Debtors' former bankruptcy attorney, Bosse appears to be the CEO of the company cashing the Debtor's checks to ICI.

18. The Debtors reached out to the California State Bar to assist with the alleged self-dealing by Bosse. The Debtors are informed that the State Bar is investigating their allegations.

19. The Debtors have had a series of unfortunate interactions with prior bankruptcy counsel. After the filing of the Debtors' 2017 chapter 13 case, they experienced some difficulties with communication with their prior attorney and they indicate that they were not fully apprised of

the status of their case. The Debtors' prior counsel failed to appear at the last confirmation hearing in the prior matter and the case was dismissed. Although a motion to reconsider the dismissal was filed by prior counsel, the Debtors are informed and believe that prior counsel failed to appear at the hearing on the motion to reconsider the dismissal.

20. Prior to the filing of the within case, on or about October 11, 2018, Debtors' current bankruptcy counsel, Misty Perry Isaacson ("Isaacson") reached out to ICI's counsel in the prior 2017 case, Fritz Firman ("Firman"), requesting a loan history from ICI, so that she could propose a plan that dealt with the ICI claim. Two months later, Isaacson has not received a loan history from ICI or Firman.

21. The Debtors have also hired William Chapman as litigation counsel ("Chapman") to assist them in resolving their claim dispute with ICI. The deadline for non-governmental creditors to file their proofs of claim is December 31, 2018. Once ICI files it proof of claim, Isaacson and Chapman intend on filing an objection and/or adversary in order to resolve the outstanding issues related to the accounting of the Note by Homesavers, TTR, PIG, and ICI.

**II.**

**ARGUMENT**

**A.    Treatment to ICI**

ICI argues that the Debtors' plan cannot be confirmed because it is not feasible and does not provide for ICI's debt they claim to be approximately $140,000. However, until the controversy surrounding the amount owing, if any, to ICI, the Debtor is unable to propose any payment to ICI. Had ICI promptly provided Isaacson with a loan history, the Debtors' proposed plan could have clearly identified what the issues related to the same was. Notwithstanding Isaacson's request, two months have passed without receipt of a loan history. Based on the

facts as outlined above, equity weighs in favor of allowing the Debtors a review of the evidence alleged to support ICI's claim that they are owed $140,000.  The Debtors are not requesting that their case be confirmed at the hearing on December 13, 2018, just that they be given a fair opportunity to respond to the contentions of ICI.

**B.    2017 Federal Taxes**

The Debtors were under the understanding that their 2017 Federal Tax Return had been electronically filed in October 2018.  However, due to some computer glitch, the returns were not accepted by the Internal Revenue Service ("IRS").  Upon learning of this issue, the Debtors mailed a duplicate copy of their 2017 return to the IRS on or about November 8, 2018.  A copy of the returns has also been provided to the IRS's Bankruptcy Specialist Robert L. Textor and Isaacson has confirmed that he has received a copy of the same.  Mr. Textor advised Isaacson that once the return was uploaded into the IRS's system, they would amend their proof of claim accordingly.

**C.    Means Test Payments to ICI**

Should it be determined that there is no debt owing or the amount owing to ICI as alleged is inaccurate, the Debtors intend on amending their Means Test to reflect the correct information related to the ICI loan.  Should the Court determine that nothing should be owing or the amount decreased, the difference will operate to increase the disposable income available to unsecured creditors, mainly the IRS.  The Debtors were hoping to have received a loan history from ICI prior to the filing of their case, however, none was received.

**D.    Debtors Intend on Clarifying their Self Employment Income to the Trustee**

The Debtors are both self-employed individuals, and their income fluctuates monthly.  The projections provided by the Debtors to the Trustee, appear to double count certain expenses that

are reflected on Schedule J and should not have been.  This makes it appear that the Debtors' income after business expenses is less than what is being received.  The Debtors will revise this information and continue to provide the Trustee with updated actual income information.

## III.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully prays that this Honorable Court continue this matter to a date after December 31, 2018, to allow the Debtors to receive and begin to address the issues related to the anticipated ICI proof of claim; and for such other and further relief as the Court deems just and proper.

Date: December 5, 2018           **PAGTER AND PERRY ISAACSON**

/s/ Misty Perry Isaacson
By: _____
Misty Perry Isaacson
Attorneys for Francisco Ramirez Ramirez and
Maria Mendez Barajas

PPI Law
525 N. Cabrillo Park Drive,
Suite 104
Santa Ana, CA
92701

(714) 541-6072

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **525 N. Cabrillo Park Drive, Suite 104, Santa Ana, CA  92701**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS REPLY TO  OBJECTIONS TO CONFIRMATION FILED BY TRUSTEE AND INVESTMENT CONSULTANTS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **12/05/2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Amrane (SA) Cohen (TR)**    efile@ch13ac.com
- **Sean C Ferry**    sferry@ecf.courtdrive.com, bkyecf@rasflaw.com
- **Fritz J Firman**    firmanweber@Yahoo.com, centralservice.firmanweber@gmail.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **12/05/2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Catherine E. Bauer, 411 W. Fourth St., Suite 5165, Santa Ana, CA 92701 (Overnight via GSO)

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **12/05/2018** | **Imelda Bynog** | **/s/ Imelda Bynog** |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

PPI Law
525 N. Cabrillo
Park Drive,
Suite 104
Santa Ana, CA
92701

(714) 541-6072

– 8 –