FILED

AUG 3 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1257-STaF |
| FRANCISCO RAMIREZ RAMIREZ and AURORA MENDEZ BARAJAS, | Bk. No. 8:18-bk-13870-CB |
| Debtors. | |
| INVESTMENT CONSULTANTS, INC., | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| FRANCISCO RAMIREZ RAMIREZ; AURORA MENDEZ BARAJAS, | |
| Appellees. | |

Argued and Submitted on May 20, 2020

Filed – August 3, 2020

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

——————

Appearances:    Fritz J. Firman argued for appellant; Misty Ann Perry
                Isaacson of Pagter and Perry Isaacson, APLC argued for
                appellees.

——————

Before: SPRAKER, TAYLOR, AND FARIS, Bankruptcy Judges.

## INTRODUCTION

Investment Consultants, Inc. ("ICI") appeals from an order disallowing without prejudice ICI's proof of claim against chapter 13[1] debtors Francisco Ramirez Ramirez and Aurora Mendez Barajas ("Debtors"). The bankruptcy court determined that a different company – Paladin Investment Group ("Paladin") – was the true owner of the loan rights underlying ICI's proof claim. Those loan rights arose from a home equity line of credit ("HELOC") and a deed of trust securing the HELOC ("Deed of Trust") assigned to ICI. Paladin, owned by Debtors' former bankruptcy counsel, funded the assignment, but neither Paladin nor counsel ever disclosed to Debtors their involvement with the assignment.

Debtors objected to ICI's proof of claim based on the absence of an accounting and challenged the amounts actually owed under the HELOC.

——————

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

At the evidentiary hearing on the claim objection, the bankruptcy court sua
sponte determined that ICI was not the true owner of the loan.

Though the parties now urge various arguments for affirmance or
reversal, the matter before us is narrow. Because we find that the
bankruptcy court erred by determining that ICI did not own the loan
rights, we REVERSE and REMAND.

## FACTS

In April 2007, Debtors entered into the HELOC with Homesavers
with an initial credit limit of $65,000.00 though the limit could increase to a
maximum of $72,222.00. The monies drawn on the HELOC accrued interest
at 12.99% annually. Debtors only were required to make monthly interest
payments, with the balance payable in a balloon payment due on March 27,
2015.

At the same time as they entered into the HELOC, Debtors executed
the Deed of Trust on their residence to secure their obligations under the
HELOC. The Deed of Trust was recorded on May 18, 2007. That same day,
Homesavers assigned the Deed of Trust ("First Assignment") to TTR
Investments, Inc. ("TTR"), conveying its interest in the Deed of Trust as
well as its interest in Debtors' underlying obligations. The First Assignment
was recorded on May 29, 2007.

The parties agree that Debtors drew at least $29,771.58 on the
HELOC. ICI also maintains that it is owed $13,684.00 in fees and charges

3

incurred at the time the HELOC was entered into. Debtors did not dispute the amount of loan origination fees and charges incurred. ICI further contends that Debtors received from TTR another $6,500.00 under the HELOC in 2007. Debtors also did not dispute their receipt of this amount. Accordingly, there is no dispute that Debtors owed at least $49,955.58 under the HELOC.

Debtors defaulted on their obligations and TTR eventually began foreclosure proceedings causing Mr. Ramirez to file a chapter 13 petition. He dismissed this case in June 2014, only to have Ms. Barajas file her own chapter 13 petition a month later. Gregory Bosse represented Debtors in both cases. TTR filed a secured claim in Ms. Barajas' case in the amount of $140,551.51 and attached a computation of this claim showing $72,298.05 in principal, $58,561.03 in accrued interest, and the balance comprised of late charges, various fees, and costs. Neither Debtor obtained confirmation of a chapter 13 plan. Bosse sought and obtained dismissal of Ms. Barajas' bankruptcy on November 17, 2014.

Even during their bankruptcy cases Debtors remained concerned that TTR would foreclose on their residence. Bosse recommended that Debtors find a third party to purchase the Deed of Trust. Bosse contacted a friend, C.P. Fisher, who owned ICI and asked if ICI would be willing to buy out TTR. ICI agreed. However, ICI did not have the funds to purchase TTR's secured debt. Bosse, through his wholly owned corporation Paladin,

4

actually paid TTR between $85,000.00 and $90,000.00 for ICI to purchase
the secured debt.[2] On November 20, 2014, TTR executed an assignment of
Deed of Trust ("Second Assignment") in favor of ICI. Like the First
Assignment, the Second Assignment was recorded. The Second
Assignment conveyed to ICI all of TTR's interest in the Deed of Trust, as
well as Debtors' underlying obligations.

Bosse emailed Debtors on November 25, 2014, to advise them that
TTR had assigned the Deed of Trust to ICI. The email stated: "This is
interest-only. It does not reduce the principal amount of $140,000.00."
Bosse also wrote: "Investment Consultants, Inc., is willing to extend the
due date for a period of five (5) years from December 1, 2014. As [sic] the
expiration of this 5-year period, the entire principal sum of $140,000.00 will
be due and payable on the extended maturity date." Bosse concluded the
email by informing them that he thought ICI would "prepare an
amendment to the Promissory Note to add these additional terms" and
instructed Debtors to mail or deliver the monthly payment of $1,515.50 to
his office. The amount of this payment suggests that it reflects the monthly
accrual of interest on $140,000.00 at 12.99% per annum.[3] This is consistent

---

[2] Bosse testified that ICI has never repaid Paladin for the monies advanced to
purchase TTR's secured debt. However, ICI permitted Paladin to keep the monthly
payments that Debtors made after TTR assigned the Deed of Trust to ICI.

[3] $140,000.00 x 12.99% = $18,186 (annual interest)/12 = $1,515.50 monthly interest
(continued...)

with Bosse's testimony that ICI agreed to keep the annual percentage

interest rate at 12.99%.

It is undisputed that Debtors made monthly payments of $1,515.50

from the beginning of December of 2014 until July of 2017. After that,

Debtors defaulted on the loan as modified by not making their monthly

payments leading them to file their current joint chapter 13 case in October

2018.

ICI filed its proof of secured claim in the amount of $163,284.01. It

included a Mortgage Proof of Claim Attachment stating the principal

balance owed as $140,551.51, with accrued interest of $22,732.50 from

August 2017 through the month of Debtors' petition. ICI also included the

itemization of the debt attached to TTR's claim filed in Ms. Barajas' 2014

chapter 13 case.

Debtors objected to ICI's claim. They asserted that they never drew

more than $29,771.58 on the HELOC from Homesavers, though they did

not dispute that they also incurred $13,685.00 in fees and later borrowed an

additional $6,500.00 from TTR. But they insisted that the principal balance

they owed should not have been more than $50,000.00. In support of their

position, they pointed to TTR's recorded notice of default stating that the

outstanding balance was $56,074.88 as of October 17, 2013.

---

[3](...continued)
payment.

This led Debtors to argue that ICI had submitted insufficient documentation to support the amount of its proof of claim. Debtors reasoned that, as a result, ICI was not entitled to the presumption of the validity and amount of its claim under Rule 3001(f). Debtors further argued that ICI had not met the burden of proof to establish its claim by a preponderance of the evidence.

Debtors also disputed that ICI had established its ownership of the loan rights arising from the HELOC and the Deed of Trust or that it otherwise was entitled to enforce those rights. This argument was based solely on the fact that the HELOC had not been indorsed – like a negotiable instrument – in favor of ICI. Debtors did not dispute the authenticity of either assignment of Deed of Trust or that ICI was the assignee of record under the Second Assignment.

Debtors did raise concerns regarding the conduct of their former bankruptcy counsel Bosse. They stated that it was Bosse's idea to look for an investor to "buy" the loan from TTR. It was Bosse that found ICI and solicited it to purchase their loan. According to Debtors, Bosse did not specify the terms of a modified home loan. They contend he only told them that their monthly interest-only payments going forward would be $1,515.50 and that they should hand deliver those payments to his law office each month. Even though Debtors believed that Bosse was forwarding their monthly payments to ICI, they later received from Bosse

7

mortgage interest statements (IRS Form 1098s) for 2015 and 2016 issued by
Paladin. These documents listed Paladin as the "lender" or the "recipient"
of Debtors' mortgage interest payments. Debtors only later discovered that
Bosse was the sole owner of Paladin.

ICI opposed the claim objection. It calculated the loan fees Debtors
incurred and the amounts paid to them or on their behalf as $49,955.58. ICI
also acknowledged TTR's 2013 recorded notice of default reflecting "the
amount in default as $53,074.88." But ICI stated that when it received the
assignment of the loan from TTR in November 2014, it modified the loan
terms. Specifically, ICI extended the maturity date of the loan for five years,
until December 1, 2019, and stated the principal amount was $140,000.00.
ICI retained the original interest rate of 12.99% and required monthly
interest-only payments of $1,515.50. As ICI viewed it, Debtors did not
challenge ICI's specified loan terms until they filed their claim objection in
March 2019 – nearly four and a half years after the parties entered into the
loan modification.

ICI further argued that Debtors were barred from contesting the
validity and amount of the claim based on the doctrines of laches and claim
preclusion. Alternately, ICI maintained that the documentation
accompanying its proof of claim was sufficient and that the basis for its
calculation of its proof of claim in the amount of $163,284.01 was clear.

The court held an evidentiary hearing on the claim objection in

8

September 2019. At the hearing, Debtors conceded that they signed the original loan documents and were originally liable for a principal amount of roughly $50,000.00. As they framed the issue, the dispute was "a case about math. . . . [W]hat was the balance owed on the [HELOC] and the Deed of Trust when TTR purchased it one day after the loan closed?" And this necessarily included whether "interest on the loan had been properly calculated on that amount." Hr'g Tr. at 8:5-8.

ICI called TTR's principal, Tim Racich, as a witness. In his declaration, Racich had stated that between TTR's purchase of the HELOC rights in 2007 and his resale of those rights to ICI in late 2014 or early 2015, he only received three payments from Debtors. The documentation attached to the Racich declaration reflects that Debtors actually made more than three payments in 2007 and 2008 to TTR's servicer FCI. During his live testimony at the claim objection evidentiary hearing, Racich admitted he was wrong when he said in his declaration that Debtors only made three payments to TTR between 2007 and 2015. In fact, he admitted that in addition to three payments totaling roughly $2,300.00 Debtors made in 2007, they also paid an additional $11,404.49 in 2008.

ICI's principal C.P. Fisher also testified. Fisher disclosed that Bosse had been serving as his corporate attorney for 40 years. Fisher testified that Bosse contacted him regarding the pending foreclosure against Debtors' residence and said that they needed to find an investor willing to buy the

9

HELOC rights in order to stop the foreclosure. Fisher recalled that ICI paid TTR roughly $85,000.00 for the assignment of the HELOC rights and the Deed of Trust, though he admitted that Paladin had "funded" ICI's purchase of the loan.

Fisher further testified that Paladin serviced the loan on ICI's behalf, but Paladin never provided ICI with any written statements. Rather, Fisher relied on his conversations with Bosse to know whether Debtors were performing on the loan. Significantly, Fisher also stated that the principal balance of the loan on which interest payments were to be calculated was somewhere between $59,000.00 and $65,000.00. When asked why the interest-only monthly payments were calculated as $1,515.50, when a 12.99% annual percentage rate for a $65,000.00 loan would yield monthly payments of roughly $700, Fisher replied, "I don't know. You got me." He also stated that the proof of claim's calculation of the outstanding balance of the loan as $163,284.01 did not seem correct. He could not explain how the principal amount of the claim was calculated as $140,551.51, and he deferred to Bosse to explain the calculation.

As for Bosse's testimony, he admitted that his company Paladin funded ICI's payment to TTR for Debtors' loan. He stated that Paladin loaned ICI the purchase price but that ICI never made any payments on this loan. Bosse also testified that the outstanding loan balance for ICI's purchase money loan was "[p]robably around $90,000.00."

10

Per Bosse's instructions to them, Debtors delivered their $1,515.50 monthly interest payments directly to Bosse. According to Bosse, Paladin cashed all of the loan payments Debtors made between 2015 and 2017 and deposited them in Paladin's account for its own benefit. When asked why Paladin kept the loan payments, Bosse explained:

> Mr. Fisher of Investment Consultants said, I would
> like you to service this. I'll get you the money as
> soon as I can. That didn't happen, and he said, well,
> it's Paladin's money, Paladin should receive the
> payment on the thing until I pay it off.

Hr'g Tr. (Sept. 19, 2019) at 96:6-10. Bosse further explained that the absence of a note or any other writing evidencing Paladin's purchase money loan to ICI was consistent with the ordinary course of his long friendship and business dealings with Fisher and his companies.

Debtors called ICI's counsel Fritz Firman as an adverse direct witness to answer questions regarding how he calculated the principal amount in the proof of claim he filed on behalf of ICI. Ultimately, Firman identified the increase of the principal balance from $72,000.00 to $140,000.00 as a "mistake." He indicated that the $140,000.00 principal amount included unpaid interest and fees that should not have been rolled into the principal amount. He testified that he did not believe that ICI had been charging interest on the inflated $140,000.00 principal amount.

At the conclusion of the hearing, the bankruptcy court rendered its

11

ruling. The court found that, even though Debtors' loan was assigned to ICI, ICI never paid for it. Because Paladin funded the money to purchase the loan rights, not ICI, the court held that Paladin (or Bosse) owned the loan rights. As the court put it, ICI's proof of claim had to be disallowed in its entirety because "there's nothing owed to this particular creditor." The court referred to ICI as a strawman for Bosse, and Paladin's purchase money loan to ICI as a sham.

As for the amount owed, the court remarked that ICI inappropriately capitalized unpaid interest and fees to arrive at the $140,000.00 principal amount, which resulted in ICI overcharging Debtors for interest. However, in light of its determination that ICI was not the true creditor, the court declined to make specific findings regarding the principal amount owed, the correct amount of interest and other charges accrued, or the total amount of payments made.

On September 27, 2019, the court entered its order disallowing ICI's claim without prejudice. ICI timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We must determine the finality of the order disallowing ICI's claim "without prejudice" to some other entity filing a new claim based on the same loan rights. An order effectively ending the litigation or putting the plaintiff out of federal court is final and immediately appealable. *See,*

12

*e.g.*, *Harmston v. City & Cty. of S.F.*, 627 F.3d 1273, 1278 (9th Cir. 2010) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996)); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1102-03 (9th Cir. 2005); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 746-47 (9th Cir. 1993); *United States v. Lee*, 786 F.2d 951, 955-56 (9th Cir. 1986). This is exactly what happened to ICI. While the bankruptcy court's "without prejudice" language left open the possibility that someone else might be able to assert a claim in Debtors' bankruptcy case for the loan, it conclusively ruled that ICI was not a creditor. Because the bankruptcy court's decision fully and finally adjudicated ICI's loan rights against Debtors' estate we have jurisdiction over ICI's appeal under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court commit reversible error when it disallowed ICI's claim in its entirety?

## STANDARDS OF REVIEW

The bankruptcy court's legal conclusions are reviewed de novo. *Miller v. United States*, 363 F.3d 999, 1003 (9th Cir. 2004). But we review its findings of fact for clear error. *Poonja v. Alleghany Props. (In re Los Gatos Lodge Inc.)*, 278 F.3d 890, 893 (9th Cir. 2002). The bankruptcy court's factual findings are clearly erroneous if they are "illogical, implausible, or without support in the record." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th

13

Cir. 2010).

## DISCUSSION

ICI argues that the bankruptcy court erred by disallowing its proof of claim in its entirety. They ask that this Panel reverse the disallowance of its claim, and allow the claim in the total principal amount of $140,000.00, secured by Debtors' residence. ICI further contends that the bankruptcy court erred when it did not recognize that Debtors' prior bankruptcies established the amount of its claim and precluded Debtors from challenging the validity or amount of its claim. Finally, it argues that the court inappropriately found that ICI was not the real party in interest, and, therefore, not a creditor. We begin our analysis with this point. If ICI was not a creditor, we need go no further in our analysis.

**A.    The bankruptcy court's ruling that ICI was not a creditor.**

The bankruptcy court determined that ICI did not really own the loan rights arising from the HELOC and the Deed of Trust. Because it found that ICI had no rights against Debtors, the court concluded that it was not a creditor and disallowed its claim without prejudice to the real party in interest bringing such a claim. According to ICI, its interest in the HELOC and the Deed of Trust was established by the Second Assignment, pursuant to which TTR assigned its undisputed interest in the loan rights to ICI. In turn, TTR's interest was established by the First Assignment, pursuant to which Homesavers assigned its interest in the HELOC and the Deed of

14

Trust to TTR.

The bankruptcy court nonetheless looked behind the Second
Assignment and concluded that ICI did not own the loan rights because it
did not pay for the assignment. Though both Fisher and Bosse testified that
Paladin loaned ICI the money so that ICI could acquire the loan rights from
TTR, the bankruptcy court sua sponte ruled that this so-called purchase
money loan from Paladin to ICI was a sham.[4] Based on that finding, the
court precluded ICI from pursuing the debt TTR assigned to it.

As a threshold matter, we do not know what legal theory the
bankruptcy court applied when it determined that ICI did not own the loan
rights. The bankruptcy court failed to give any legal reason why the loan

---

[4] The record developed at the evidentiary hearing established that Bosse financed
an ill-defined agreement with a friend to take over his clients' home loan shortly before
foreclosure. The record strongly suggests that Bosse failed to disclose his involvement
with ICI to Debtors. These actions raise a host of serious questions concerning his
failure to disclose and the duty of loyalty he owed to his clients, or former clients. *See
generally*  Cal. Rules of Prof. Conduct ("CRPC") Rules 1.7, 1.9(a); *Oasis W. Realty, LLC v.
Goldman*, 51 Cal. 4th 811, 821 (2011) (describing continuing nature of attorney's duty of
loyalty to a former client; *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 285 n.4 (1994) (discussing
requirement of informed written consent). Also, Bosse's conduct raises questions under
Cal. Prob. Code § 16004(c) (presuming that a trustee has breached his or her fiduciary
duty to the beneficiary if he or she transacts with them and thereby obtains an
advantage from them), and CRPC Rule 1.8.1 (formerly Rule 3-300) (restricting business
transactions between attorneys and their clients and the attorneys' acquisition of
adverse interests). Again, these questions were not raised by Debtors in their claim
objection. We cannot help but note these concerns given the record before us. But we
also note that they are outside the scope of the claim objection, and the record is not
fully developed as to these matters.

rights were not transferred by the written assignments. Nor are we aware of any reason. The First Assignment and the Second Assignment satisfied the general requirements for valid assignments in that they manifested the intent of the owner of the transferred rights to convey them to another without further action. *See* 1 Witkin, Summary of Cal. Law, Contracts § 729 (11th ed. 2019); Restatement (Second) of Contracts § 324, cmt. a (1981); *see also* 5 Miller & Starr, Cal. Real Est., § 13:43 (4th ed. 2020) ("A claim for money enforceable by judicial action whether it arises out of a tort or out of an obligation, may be transferred by indorsement *or by a written assignment and without notice to the obligee . . . .*") (footnotes omitted and emphasis added). Moreover, the law of assignments generally recognizes that a donor may pay for an assignment of rights to a third party donee. Restatement (Second) of Contracts § 327, cmt. a and illus. 1.

Put bluntly, we have no idea whether the court thought Paladin was the true assignee based on some species of fraud, constructive trust theory, or some sort of general equitable reformation of the Second Assignment to reflect the parties' "true" interests. Regardless of what legal theory the bankruptcy court thought it was applying, any determination regarding the validity of the Second Assignment and ICI's interest in the loan rights should have been raised, if at all, in an adversary proceeding. Under Rule 7001(2), "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" must be brought as an adversary proceeding.

16

Similarly, to the extent that Debtors seek to assert claims against Paladin or Bosse, they must be brought (if at all) by adversary proceeding under Rule 7001. Rule 3007(b) precisely specifies the relationship between a claim objection and the need to file an adversary proceeding: "A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." In this instance the court, rather than Debtors, sua sponte imposed the relief requiring an adversary proceeding. Nonetheless, the procedural protections afforded to litigants in adversary proceedings still apply.

This Panel previously has explained that there are significant procedural differences between contested matters and adversary proceedings. *Ung v. Boni (In re Boni)*, 240 B.R. 381, 385-86 (9th Cir. BAP 1999). As a result, it is error for a bankruptcy court to determine property interests outside of an adversary proceeding. *See, e.g.*, *Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1336-38 (9th Cir. 1985) (reversing order confirming chapter 11 plan because plan proponent attempted to invalidate liens through plan confirmation process rather than an adversary proceeding); *Cogliano v. Anderson (In re Cogliano)*, 355 B.R. 792, 805 (9th Cir. BAP 2006) (holding that "the bankruptcy court lacked authority to determine whether the IRA was property of the estate" outside of an adversary proceeding); *Expeditors Int'l of Wash., Inc. v. Citicorp N. Am.,*

*Inc. (In re Colortran, Inc.)*, 218 B.R. 507, 510-11 (9th Cir. BAP 1997) (declaring

void bankruptcy court order denying compromise motion to the extent the

order purported to invalidate creditor's lien).

   We acknowledge that the failure to proceed through an adversary

proceeding, under certain circumstances, can be considered harmless error.

*Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551 (9th Cir. BAP 2002).

Typically, however, such a failure is harmless error only if the following

conditions are satisfied:

> (1) the material facts were few and undisputed, (2) the
> dispositive issues were pure questions of law, (3) neither party
> expressed any discontent with the contested matter procedures
> the bankruptcy court utilized, and (4) this Panel was "satisfied
> that neither the factual record nor the quality of the
> presentation of the arguments would have been materially
> different had there been an adversary proceeding."

*Jahr v. Frank (In re Jahr)*, BAP No. EW–11–1538-MkHJu, 2012 WL 3205417, at

*5 (9th Cir. BAP Aug. 1, 2012) (citing *In re Munoz*, 287 B.R. at 551).

   Here, Debtors did not seek relief under Rule 7001. Rather, they

simply objected to the allowance of ICI's claim. The court sua sponte raised

the matter largely in its ruling, thereby denying ICI the opportunity to

develop the facts or its argument surrounding the Second Assignment.

Thus, the first two *Munoz* criteria are not met. Nor is the fourth *Munoz*

factor met. Having reviewed the record, we are in fact convinced that if an

adversary proceeding had been filed challenging the bona fides of the

Second Assignment, both the factual record and the quality of the arguments would have been materially different from those presented in Debtors' claim objection proceeding.

The only *Munoz* factor arguably met was the third one because ICI did not object when the bankruptcy court effectively determined in the claim objection proceeding that Paladin was the true owner of the loan rights. Even so, it hardly would be fair – or consistent with the dictates of due process – to say that ICI waived or forfeited its right to an adversary proceeding when the court sua sponte raised the ownership issue for the first time in the process of rendering its final decision. *See In re Boni*, 240 B.R. at 386 ("At a minimum, such a waiver requires that the parties be advised of and have an opportunity to address all the issues being decided.").

Accordingly, the bankruptcy court erred when it determined that Paladin and not ICI was the true owner of the loan rights arising from the HELOC and the Deed of Trust.

**B.    Claim preclusion analysis.**

Having established that on this record ICI could assert a claim against Debtors based on the Second Assignment, ICI next argues that the bankruptcy court should have allowed its claim by applying claim preclusion. ICI contends that claim preclusion barred Debtors from objecting to ICI's current proof of claim because they did not object to

19

TTR's proofs of claim filed in their 2014 bankruptcy cases. ICI maintains

that because no one objected to TTR's claim in the prior bankruptcy cases,

those claims were deemed allowed under § 502(a), and this precludes any

challenge now.

The elements of claim preclusion are well established: "(1) a final

judgment on the merits; (2) the judgment was rendered by a court of

competent jurisdiction; (3) a second action involving the same parties [or

their privies]; and (4) the same cause of action involved in both cases."

*Knupfer v. Wolfberg (In re Wolfberg)*, 255 B.R. 879, 881–82 (9th Cir. BAP 2000),

*aff'd*, 37 F. App'x 891 (9th Cir. 2002). ICI does not engage in any specific

analysis concerning the application of claim preclusion to the 2014

bankruptcy. Rather, it contends that the Ninth Circuit's holding in *Siegel v.*

*Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 530-31 (9th Cir. 1998), is

dispositive. The debtors in *Siegel* sued their lender for breach of contract

and fraud after obtaining a discharge in their bankruptcy.[5] The lender,

however, had filed a claim in the debtors' bankruptcy. Because no one

objected to the lender's claim, it was deemed allowed under § 502(a). The

Ninth Circuit held that the statutory allowance of a claim in the absence of

an objection was entitled to preclusive effect in future proceedings.

---

[5] The language in *Siegel* suggests that the debtors filed a bankruptcy under
chapter 7 rather than chapter 13. *See Siegel*, 143 F.3d at 532 (discussing effect of
discharge under § 727).

*Siegel* acknowledged concerns with according finality to claims that are deemed allowed under § 502(a), citing *Cty. Fuel Co. v. Equitable Bank Corp.,* 832 F.2d 290 (4th Cir. 1987). *Siegel,* 143 F.3d at 530. As *Siegel* pointed out, *County Fuel* doubted the finality of claims deemed allowed "because at the time of deemed allowance that allowance was not truly 'final' and could be contested at a later time." *Id.* (citing *Cty. Fuel Co.,* 832 F.2d at 292). The Ninth Circuit distinguished the matter before it given the posture of Siegel's bankruptcy, explaining that "even those doubts should dissipate where, as here, the debtor has received his discharge and the bankruptcy has closed. By then any lingering doubts about finality would surely have been assuaged." *Id.* Subsequent to *Siegel,* the Ninth Circuit has specifically recognized the importance of completion of the case to the concept of deemed allowance. *See In re Los Gatos Lodge, Inc.,* 278 F.3d at 894 ("although a claim is 'deemed allowed' if no party in interest objects, such a determination is not final until the conclusion of the case.").

As the Ninth Circuit has stated, "it is beyond cavil that 'once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect.'" *Enewally v. Wash. Mut. Bank (In re Enewally),* 368 F.3d 1165, 1172 (9th Cir. 2004) (quoting *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir. 1995)). But we have not found any case holding that when a chapter 13 bankruptcy case has been dismissed without confirmation of a plan and

without entry of a discharge in favor of the debtor, an un-objected to proof
of claim filed in that case before dismissal should be "deemed allowed"
under § 502(a) for purposes of claim preclusion against the debtor in later
litigation. To the contrary, the only case that appears to have squarely
addressed preclusion of allowed claims where a chapter 13 case was
dismissed held that "[i]n a dismissed Chapter 13 proceeding, lacking either
confirmation of a plan which recognizes Plaintiff's claim or an objection
filed to that plan by Plaintiff, *res judicata* does not attach." *Fisher v. Santry
(In re Santry)*, 481 B.R. 824, 830 (Bankr. N.D. Ga. 2012).

     In contrast to *Siegel*, Debtors' prior chapter 13 cases never reached
confirmation. Consequently, neither Debtor received a discharge. Instead,
Debtors voluntarily dismissed their cases and failed to proceed to finality
in any aspect of their bankruptcies. Claim preclusion depends on entry of a
final judgment on the merits. *In re Enewally*, 368 F.3d at 1172 (preclusive
effect of a confirmed plan "is consistent with the general principle of *res
judicata* that '[a] final judgment on the merits of an action precludes the
parties or their privies from relitigating issues that were or could have been
raised in that action.'") (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S.
394, 398 (1981)). Here, without any confirmed plan there is simply no
judgment on the merits to be afforded preclusive effect. Accordingly, even
under *Siegel*, claim preclusion did not bar Debtors' current claim objection.

## C.    Claims objections generally.

ICI further argues that the court erred in disallowing its claim because Debtors clearly owed something on the HELOC. On the other hand, Debtors argue that the record demonstrates that the we must affirm disallowance of the claim in full.[6]

A proof of claim signed and filed in compliance with the Rules is prima facie evidence of the validity and amount of the claim. Rule 3001(f). The party objecting to the claim must produce evidence and show facts tending to defeat the sworn statements in the proof of claim "by probative force equal to that of the allegations of the proofs of claim themselves." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 Collier on Bankruptcy ¶ 502.02 (15th ed. 1991)). Put differently, when Rule 3001(f) applies, it creates a presumption as to the validity and amount of the claim. *Boruff v. Cook Inlet Energy LLC (In re Cook Inlet Energy LLC)*, 583

---

[6] Debtors also argued that the writings ICI attached to its proof of claim were insufficient because it failed to produce an original note or any indorsements. This argument is meritless. Debtors' debt to Homesavers is evidenced by the HELOC loan agreement and not by a promissory note. The HELOC is not a promissory note – an unconditional promise to pay the amount stated. *See* U.C.C. § 3-104. Nor is the HELOC an instrument within the meaning of Article 3 of the Uniform Commercial Code. *See* 5 Cal. Real Est., *supra,* at § 13:44. Consequently, the Commercial Code's rules of negotiation, including those governing indorsement (*see* U.C.C. § 3-204), do not control the transfer of these loan rights. *See* 5 Cal. Real Est., *supra,* at § 13:44. Rather, the HELOC is a contract. Non-negotiable contract rights (also known as choses in action) can be conveyed by assignment. *See* 1 Witkin, *supra,* at § 727. Such assignments do not *require* indorsement or negotiation, though these same rights also *can* be conveyed by indorsement, "in like manner with negotiable instruments." Cal. Civ. Code § 1459.

B.R. 494, 501 (9th Cir. BAP 2018) (citing *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000)). To overcome this presumption and move forward with the claim objection proceeding, the objecting party needs to produce evidence sufficient to defeat the prima facie validity of the claim. *Lundell*, 223 F.3d at 1040. "In practice, the objector must produce evidence which, *if believed*, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)) (emphasis added by *Lundell*).

If the objector produces sufficient evidence to rebut the Rule 3001(f) presumption, the burden of production shifts back to the plaintiff to prove the validity and the amount of its claim. *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 707 (9th Cir. BAP 2006). "The ultimate burden of persuasion remains at all times upon the claimant" to prove its claim by a preponderance of the evidence. *Lundell*, 223 F.3d at 1039 (citing *In re Holm*, 931 F.2d at 623).

**D.    Application of the presumption to ICI's claim.**

ICI contends that the Rule 3001(f) presumption applied to its claim and that Debtors never successfully rebutted this presumption. The bankruptcy court never specifically determined whether ICI's proof of claim was prima facie valid. Instead, it held that ICI was not a creditor. As such, the court never was required to calculate the amount of the claim. The court did, however, state that if the real party in interest filed a proof

of claim under the HELOC it would need to state the claim in a "much lower amount." Hr'g Tr. (Sept. 19, 2019) at 128:14.

The record supports the court's observation. Debtors presented substantial evidence that ICI's claim could not be allowed in the amount it stated. Indeed, during the evidentiary hearing, Fisher testified that the principal amount of the claim should have been somewhere between $59,000.00 and $65,000.00, and he could not explain ICI's calculation of the claim amount. Meanwhile, Firman admitted that he made a mistake in drafting ICI's proof of claim when he increased the principal balance from $72,000.00 to $140,000.00, thereby capitalizing accrued interest.

Our review of ICI's proof of claim strongly suggests that ICI simply adopted TTR's proof of claim filed in Ms. Barajas' 2014 bankruptcy case as the principal amount owed at the time it acquired the debt. TTR's breakdown of its claim listed the principal owed at $72,298.05, accrued interest of $58,561.03, and added miscellaneous fees to state a total claim of $140,551.51. This is the exact amount of principal stated in ICI's Mortgage Proof of Claim Attachment included with its 2018 proof of claim. ICI also charged Debtors monthly interest of $1,515.50, which was based on a principal balance of $140,000.00.[7]

---

[7] Bosse's November 25, 2014 email to Debtors provided some evidence from which the bankruptcy court could conclude that Debtors agreed to recapitalize the accrued interest and fees into a principal amount of $140,000.00. Bosse advised Debtors

(continued...)

Debtors also presented substantial evidence that disputes the
amounts actually drawn under the HELOC that formed the basis of TTR's
calculation of the principal owed. As detailed above, Debtors agree that
they owed $49,956.58 in principal for monies drawn on the line of credit
and associated fees. But Debtors argue that they never completely drew the
full amount of the HELOC. After the lunch break during the hearing, ICI
attempted to introduce an exhibit to show that additional amounts were
disbursed to Debtors.[8] Based on Debtors' objection, the court refused to
admit that exhibit. Thus, the evidence admitted at the hearing suggests that
ICI overstated the principal amount of the debt, which also calls into
question the calculation of interest on that principal.

In short, Debtors have presented sufficient evidence to overcome any

---

[7](...continued)
that ICI was "willing to extend the due date for five (5) years from December 1, 2014.
[At] the expiration of this 5-year period, the entire principal sum of $140,000.00 will all
be due and payable." The e-mail additionally specified that Debtors needed to make
monthly interest-only payments of $1,515.50, and they proceeded to make the payments
for over a year. Unfortunately for ICI, its own witnesses (Fisher and Firman) offered in-
court testimony that contradicted the terms of Bosse's November 25, 2014 email, as
indicated above.

[8] ICI alleged that Debtors received an additional $22,000.00 in cash in 2007, when
they opened the HELOC with Homesavers. But ICI never successfully presented any
documentation demonstrating this receipt. The closing statement for the HELOC
attached to Debtors' claim objection does not reflect that Debtors received any cash
back. Though ICI attached Debtors' bank statements to their claim objection response
showing an account balance of roughly $25,0000.00 one month after the origination of
the HELOC, the statements do not identify the source of those funds. Mr. Ramirez
testified that those funds were revenues from his computer sales business.

presumption that otherwise might have applied concerning the amount
disbursed under the HELOC and the calculation of interest. However, the
bankruptcy court has not yet determined the specific amount of ICI's claim.
As mandated by § 502(b), the bankruptcy court still must determine "the
amount of such claim in lawful currency of the United States as of the date
of the filing of the petition," unless there is an appropriate determination
on remand – through an adversary proceeding – that ICI does not actually
own the debt.[9]

The record as it currently stands reflects that only $49,956.58 was
advanced, including fees incurred, under the HELOC. The record further
suggests that interest before the assignment to ICI was miscalculated based
on a $72,298.05 principal amount and that interest was then further
miscalculated using $140,000.00 as the principal amount. Additionally, we
are unable to discern the appropriate amount of late fees and other
charges.[10]

That being said, Debtors have neither alleged nor given any factual or
legal basis to call into question the original $49,956.58 principal amount.

---

[9] We leave it to the bankruptcy court's discretion to determine whether Debtors
should be afforded more time to file an adversary proceeding seeking to determine
ICI's ownership interest in the loan rights.

[10] We have not seen anything in the record proving up the total amount of late
fees and other charges ICI used, though page 5 of Exhibit 1 attached to the declaration
of Tim Racich gives some indication of the late fees and other charges assessed against
Debtors, as does the proof of claim TTR filed in Ms. Barajas' 2014 bankruptcy case.

Nor have they done anything to challenge the number and amount of loan
payments ICI says Debtors have paid over the course of the loan, though
they do dispute how ICI and its predecessors credited those payments
against interest.[11] Ordinarily, when the objecting party fails to state any
factual or legal basis for challenging the validity or amount of the claim,
and there is some proof to support the amount of the claim, the bankruptcy
court should allow the claim in the amount for which there is support. *See
Campbell v. Verizon Wireless S–CA (In re Campbell)*, 336 B.R. 430, 432-36 (9th
Cir. BAP 2005) (affirming order overruling debtors' claim objection where
debtors did not "actually allege any reason to believe that some charges
might be unauthorized, or that Debtors did not enter into contracts, or any
other reason to question their liability or the amounts claimed."); *see also
Bayview Loan Servicing, LLC v. Donnan (In re Donnan)*, BAP No.
EC-18-1106-BSL, 2019 WL 1922843, at *6 (9th Cir. BAP Apr. 29, 2019)
(stating that "bankruptcy court err[ed] by arbitrarily reducing the
prepetition fees and costs to $ 600.00, a number that was thrown out by the
Donnans but never supported . . .").

---

[11] The record reflects three loan payments made in 2007, six payments made in
2008, no payments made in 2009 through 2013, one payment made in 2014, 24 loan
payments made in 2015 and 2016, and seven payments made in 2017. The bankruptcy
court on remand might be able to determine from the record the aggregate amount of
payments Debtors made. The court has the discretion on remand to decide whether to
reopen the record regarding payments, or to allow the parties to file supplemental
briefing to facilitate the calculation of total payments made, or to facilitate any other
method for calculating the total amount of the claim.

We agree with ICI that on the record currently presented some amount is due. But claims are not allowed for "some amount." Debtors rebutted the presumption as to the amount ICI stated in its proof of claim. Indeed, ICI's witnesses admitted that its claim was overstated. This precluded allowance of ICI's claim as filed. ICI, therefore, needed to meet its burden to prove the specific amount of its claim. While ICI would have us direct the bankruptcy court to allow its claim in a specific amount, it has never offered any alternative calculation aside from its adoption of TTR's proof of claim filed in Ms. Barajas' 2014 bankruptcy case.

It is not our job to scour the record to compute ICI's claim, and given the substantial questions concerning the principal, interest, late fees, and other charges, we cannot do so. The bankruptcy court must determine whether any amounts are owed as principal above the agreed amount of $49,956.58. Against the allowed principal amount, the bankruptcy court also must determine whether ICI has proven that Debtors' payments were properly applied and whether interest, fees, and other charges were properly assessed. And there remains the potential preliminary question of whether Bosse's failure to disclose his involvement in the assignment of the debt to ICI might render the debt unenforceable, as well as the issue of whether the court should look behind the Second Assignment. Accordingly, we must remand this matter to permit the bankruptcy court to address these issues and ultimately to determine the amount of ICI's

claim, if any.

On remand, the bankruptcy court has discretion to determine how to proceed. *Wilkins v. United States*, 279 F.3d 782, 790 (9th Cir. 2002); *de Jong v. JLE-04 Parker, L.L.C. (In re de Jong)*, 588 B.R. 879, 889 (9th Cir. BAP 2018) (citing *Stacy v. Colvin*, 825 F.3d 563, 567-68 (9th Cir. 2016)). It may rule on the record developed at the evidentiary hearing or may reopen the hearing and take additional evidence. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994); *Hagans v. Andrus*, 651 F.2d 622, 626 (9th Cir. 1981); *Arciniega v. Clark (In re Arciniega)*, BAP No. CC-17-1154-SAKu, 2017 WL 6329748, at *9 n.9 (9th Cir. BAP Dec. 11, 2017) (citing *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 551 (1983)). This is yet another reason why we must remand, as the bankruptcy court needs to rule on these unresolved procedural questions and the lingering factual disputes in the first instance.

## CONCLUSION

For the reasons set forth above, we REVERSE the bankruptcy court's order disallowing ICI's claim in its entirety, and we REMAND for further proceedings consistent with this decision.